Catherine WERGIN, Administratrix of the Estate of Russell L. Wergin, deceased, Appellant,

v.

MONESSEN SOUTHWESTERN RAIL-WAY CO., a Corporation.

No. 12519.

United States Court of Appeals
Third Circuit.

Argued June 2, 1958.

Decided Aug. 27, 1958.

Albert D. Brandon, Pittsburgh, Pa. (Calvin K. Prine, Oliver, Brandon & Shearer, Pittsburgh, Pa., on the brief), for appellant.

Gilbert J. Helwig, Pittsburgh, Pa. (Reed, Smith, Shaw & McClay, Pittsburgh, Pa., on the brief), for appellee.

Before MARIS, GOODRICH and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Judgment was entered n. o. v. for the defendant in this Federal Employers' Liability death action and plaintiff appeals.

Russell L. Wergin, plaintiff's decedent, was employed by the defendant railroad as a brakeman in switching and sorting cars. On the morning of July 29, 1954, he, then forty-six years old, was driven to work by his wife. He was wearing clean trousers and shirt. He had his work shoes on. He left the car at one of the entrances to the railroad property. His wife went straight home. She said she had only been in the house a few minutes when a man came to the door and told her that "Russ had dropped dead in the mill."

About fifteen minutes after Wergin had arrived on the railroad premises, he was found lying on the floor of the roundhouse. The men working there carried him to the plant hospital where he was pronounced dead on arrival. The cause of death was acute cardiac failure. An autopsy revealed a fracture of the nose and facial lacerations and abrasions. When found he was lying face down with his arms to his sides.

The roundhouse has a concrete walkway, 12 to 14 feet wide, running through it. This is used by railroad employees on their way to and from work and was so being used by decedent on the morning of his death. Attached to the roof column of the roundhouse near where Wergin was lying is a hose to supply oil to locomotives brought into repair pits on the opposite side of the walk and to fill cans of lubricating oil for locomotives outside the building. The hose nozzle dripped oil, as Harry Winstone, the only witness to this in plaintiff's case, said, " * * * just like any other nozzle, you take any nozzle will drip a little drop of oil when you take it from the engine. We usually try to grab, if it is dripping, we have like a rag in the hand, we hold the nozzle until we get it back to the reel." The witness continued, "Well, if the oil happens to drop off, we wipe if off with the rag they have, they call 'Sorb-All'. It is like a, it looks to me like ground up cork. I don't know whether it is." The witness had been on the shift that was finishing up when Wergin came in. The oil hose had not been used

during his shift. The evidence is that the concrete walk had been cleaned by the employees on the previous shift.

The plaintiff's theory was that Wergin had slipped and fallen because of an accumulation of oil and grease on the walk. In support of this plaintiff testified that she saw her husband's clothes the evening of the day after his death. She said, "Well there was blood on his shirt and grease; there was grease on his trousers and his shoes, still grease on the shoes."

Four doctors testified. They all agreed that the deceased was a "sudden death candidate". He had a very advanced stage of hardening of the arteries. A firm gray thrombosis condition was revealed on the autopsy but because of the embalming process, it could not be ascertained whether this was the thrombosis which produced the coronary occlusion from which Wergin suffered. In addition the deceased had a pheochromocytoma type of tumor in his right adrenal gland, the kind which could produce sudden high blood pressure. Wergin in 1947 had had a sympathectomy performed on him for the purpose of relieving his hypertension. Three of the doctors gave as their opinions that Wergin had an acute heart attack and fell. The fourth, his physician, said the acute attack followed the fall and had been produced by it.

The jury in answer to the court's interrogatories found that "the defendant negligently permitted oil or grease, or both, to accumulate on the area over which Mr. Wergin walked the morning of June 29, 1954"; that Mr. Wergin fell " *   *   * because of slipping on oil or grease" and that his death was "induced by the injuries he received when he fell."

The trial judge in allowing the defense motions for judgment n. o. v. and alternatively, new trial, concluded that " *   *   * without judging the credibility of any of the witnesses that there was no room for fair-minded men to draw different inferences as the material facts were not in dispute."

To support her charge of accumulated grease and oil on the walk causing Wergin to slip and fall, appellant urges the after condition of his clothes and shoes and the drip from the oil nozzle.

Appellant did not see the clothes and shoes from the time her husband left her at the Third Street entrance until a day and a half later when the clothes and shoes were given her, apparently by the undertaker, at her home. There is no explanation of where these were during the interval or how they were handled. The only affirmative testimony of the condition of the shirt and trousers immediately after Wergin was found lying on the walk comes from Winstone, plaintiff's witness who said that at the time he didn't observe there was any oil or grease on the front of Wergin's shirt. Shown the shirt he said, "I couldn't say it was oil. That looks to me like the dirt off the floor." And shown the pants he said there was no difference between that type of dirt off the floor mark and the type of marking on the pants. Andrew Huzele, another of the roundhouse employees who helped Wergin on to the stretcher, was asked, "When you were lifting Mr. Wergin, did you notice any grease on the front of his trousers?" He answered, "I don't believe there was any." Dr. Herron who saw decedent's body in the mill hospital at 7:45 the morning of his death said the shirt had been removed, that he doesn't remember anything about the condition of the trousers but he was positive that there was "no evidence of grease on his face."

Winstone and Huzele, together with the other people who were present in the roundhouse and who testified, stated there was no oil or grease on the concrete walk. Huzele said there were maybe a few drops of oil around the pan under the hose reel but did not believe as counsel suggested, that " *   *   * there were maybe a few drops, say four feet away from the pan."

■  The sole question before us is whether the facts, without more, that the deceased, suffering from a most

serious heart condition, was stricken acutely while within the employer's premises on the way to his post and died shortly thereafter, were enough to create a jury issue out of this Federal Employers' Liability claim. We start with the rule, now firmly established by the Supreme Court,[1] that there would be such issue and that the jury verdict must be sustained unless the proofs justify the conclusion that there was a complete absence of probative facts to support a finding of negligence committed by the railroad which played any part, even the slightest, in causing the death of Wergin. We have very much in mind that the jury has the right to draw inferences based on reason from the facts.

■ We must conclude, after an exhaustive examination of the record, that the proofs do not meet the tests laid down by the Supreme Court. Herdman v. Pennsylvania R. Co., 1956, 352 U.S. 518, 520, 77 S.Ct. 455, 1 L.Ed.2d 508. We are satisfied that no negligence of the railroad has been shown but, if we should be wrong in this, the proofs do not justify " * * * with reason the jury's conclusion that employer negligence played a part in producing the petitioner's injury". Arnold v. Panhandle & Santa Fe Railway Co., 1956, 353 U.S. 360, 77 S.Ct. 840, 1 L.Ed.2d 889.

The way Wergin fell, as indicated by his broken nose and his arms at his sides, points to a true collapse rather than slipping. The floor, including the concrete walk, had been cleaned by the shift which finished up at midnight. The succeeding group did not have any work which required the use of the cleaning hose.

Plaintiff did testify that there were grease marks on Wergin's clothes and shoes when she received them. All of the witnesses who had noticed the condition of the walk said there was no grease or oil on it at the critical time. The one witness who was shown the clothes thought that they bore the same sort of dirt mark as was on the floor but did not observe any oil or grease on them. The location of the clothes for thirty-six hours following the occurrence is not revealed. When returned the trousers around the waistband were damp and the grease on the right shoe was wet. Wherever the clothes and shoes were stored during the interval could well have been the source of whatever grease plaintiff mentioned. From this record it cannot be inferred with reason that there was oil or grease or both on the roundhouse floor or, even improperly assuming there was, that it played a part in producing Wergin's fall.

The district judge acted properly in allowing a judgment n. o. v. It will be affirmed.

1. Rogers v. Missouri Pacific R. Co., 1956, 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed. 2d 493; Webb v. Illinois Central R. Co., 1956, 352 U.S. 512, 513, 77 S.Ct. 451, 1 L.Ed.2d 503.