Peter J. ZEGAN, Appellant

v.

**CENTRAL RAILROAD COMPANY OF NEW JERSEY.**

No. 12697.

United States Court of Appeals
Third Circuit.

Argued Dec. 16, 1958.

Decided March 31, 1959.

---

Milford J. Meyer, Philadelphia, Pa. (Meyer, Lasch, Hankin & Poul, Philadelphia, Pa., on the brief), for appellant.

Richard P. Brown, Jr., Philadelphia, Pa. (Morgan, Lewis & Bockius, Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and McLAUGHLIN and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

This is a suit for negligent injury under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. After a jury, answering special interrogatories, found

the defendant negligent, assessed the plaintiff's damages at $70,000, and found half of this attributable to plaintiff's contributory negligence, the District Court entered a judgment for $35,000. Thereafter, on defendant's motions under Rule 50(b), F.R.Civ.P. 28 U.S.C.A. for entry of judgment in accordance with its earlier motion for a directed verdict and, in the alternative, for a new trial, the court set aside the judgment and entered judgment for the defendant. It also ruled that the alternative motion for a new trial was well taken and should be granted in the event the judgment for defendant should be reversed on appeal. D.C.E.D.Pa.1958, 164 F.Supp. 347. This appeal followed.

■ In reviewing the judgment thus entered, notwithstanding the verdict, we must examine the proof in the light most favorable to the prevailing party, resolving all conflicts of testimony in his favor, to determine whether the evidence was sufficient to carry the case to the jury.

Appellant Zegan worked as a car repairman at the Elizabethport shop of appellee. On the afternoon of the alleged mishap he was directed, with the assistance of another workman, to rivet an end-step to the bottom of a baggage car. The step, used by brakemen in switching operations, is a U-shaped frame which is attached to the bottom of the car so that the base of the U forms the step. One of the required rivets fastens the step to an angle brace, the other end of which is attached to the underside of the car.

The car in question had previously been brought into the shop, raised from its trucks, and placed on benches for repair work. At the conclusion of this work it had been lowered again to its trucks. It was then noticed that the end-step had not been attached and appellant was instructed to rivet the step to the car.

When the car stood on its trucks its end still was forty-four inches above the ground. However, it had been some ten inches higher while elevated on benches for repair work.

In order to rivet the step to the angle brace, appellant had to get down low enough to look up at the rivet while applying a twenty-five pound rivet gun and exerting force upward toward the underside of the step. During the period of about a minute during which appellant was crouching, resting almost on one heel, with the other leg extended and with his body bent low and so twisted that he could look up at the rivet he was driving, he felt a pain in his back.

Later, his condition was diagnosed as a protrusion of an intervertebral disc which caused muscular contracture and nerve irritation and left scar tissue after the disc receded. This condition incapacitated appellant from performing the normal tasks of his job classification, although he could still do lighter work.

One of the items of negligence charged against the railroad is unreasonably subjecting the plaintiff to the additional hazards involved in performing the job in question while the car was down on its trucks instead of up on benches. The appellant's back injury is said to have been caused, in part at least, by this extraordinarily unfavorable position of the structure on which he was required to work.

■ The trial court held that there was no evidence that the alleged negligence of the railroad was a cause of the injury. However, on the present record we think it was a permissible inference that appellant injured his back by bending very low from an already deeply crouched position, twisting his body in order to look up and then exerting strong pressure against the rivet gun. It is also rationally inferable that the difference between the position required to rivet under a car forty-four inches above ground and that required when the same structure was ten inches higher subjected the workman to an additional strain which was a significant factor in causing the injury. We must be mindful that "[u]nder this statute [F.E.L.A.] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played

any part, even the slightest, in producing the injury or death for which damages are sought." Rogers v. Missouri Pacific R. Co., 1957, 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493. In this connection there was medical testimony that a "rotary flexion motion", such as was indicated by appellant's description of his manner of performing this job, is the "greatest mechanism for producing back pain". We think it was within the province of the jury to conclude that this potentially injurious "rotary flexion motion" was substantially exaggerated by the exigency of working in a very confined space with ten inches less head room than normal.

It is true that there was evidence indicating that appellant might have assumed a less awkward position. Indeed, the not unreasonable finding of contributory negligence indicates that the jury credited this evidence. But at the same time the jury apparently found, as it properly might, that appellant did in fact assume a specially awkward and strained position in an ill-judged effort to accommodate himself to the decreased working space which resulted from lowering the car onto its trucks.

■ The foregoing analysis of the issue of causation does not dispose of the case in its entirety, because it is still necessary to consider a question which was urged as a ground of judgment n.o.v. but was not ruled upon by the trial court. That question is whether the evidence justified a finding that it was negligent to have the riveting done while the car was down upon its trucks. It is, of course, proper for us to pass upon that question without a ruling by the district court upon it since "[a] successful party in the District Court may sustain its judgment on any ground that finds support in the record". Jaffke v. Dunham, 1957, 352 U.S. 280, 281, 77 S.Ct. 307, 308, 1 L.Ed.2d 314.

The question on the issue of negligence is whether the jury had an adequate basis for concluding that the railroad created an unreasonable risk of harm to workmen by postponing the riveting of

the end-step until the car had been returned to its trucks, rather than having this work done while the car was elevated on benches. At the outset it deserves mention that the record contains no suggestion of any good reason for not having the job done while the car was in a higher position. Indeed, asked about the instructions given him by the foreman on the afternoon of the accident, appellant testified as follows: "Well, he told me to go do the riveting in that baggage car. The step wasn't riveted. They forgot to rivet the step, and go rivet that step because, the car is going to be taken out of the shop". Thus, the jury had basis for concluding that it was solely through inattention and oversight that the step had not been riveted while the car was elevated.

Next, the workman who normally did the riveting in the shop testified that work of the sort involved in this case was normally done with a car elevated on benches. Only "rarely" or "in an emergency" was it done while a car stood on its trucks. While the district court analyzed the testimony as a whole as tending to show that performance of such work while a car remained on its trucks was not as rare as this witness indicated, the jury may well have been convinced that the quoted testimony was entirely accurate. In this connection there also was testimony that with the car elevated "it would be more convenient for him to get at that rivet and both men (riveter and assistant) would be safe."

Finally, during their deliberations the jurors were free to compare for themselves the working space provided by fifty-four inches of headroom with that provided by forty-four inches and thus obtain significant guidance in judging whether any unreasonable risk of harm would seem to be imposed upon workmen by a requirement that this type of work be done in the more confined space.

■ In these circumstances we think there was a question on the evidence, appropriate for jury decision, whether in the circumstances of this case the railroad exhibited a lack of due care in post-

poning the riveting operation and requiring it to be performed after the car had been returned to its trucks.

The Supreme Court has gone very far in restricting the exercise of judicial power to enter judgment contrary to verdicts in favor of injured workmen in F.E.L.A. cases where evidence of negligence or causation has been minimal. E.g. Stinson v. Atlantic Coast Line R. Co., 1957, 355 U.S. 62, 78 S.Ct. 136, 2 L.Ed.2d 93; McBride v. Toledo Terminal R. Co., 1957, 354 U.S. 517, 77 S.Ct. 1398, 1 L.Ed.2d 1534; Ringhiser v. Chesapeake & Ohio Ry. Co., 1957, 354 U.S. 901, 77 S.Ct. 1093, 1 L.Ed.2d 1268; Schulz v. Pennsylvania R. Co., 1956, 350 U.S. 523, 76 S.Ct. 608, 100 L.Ed. 668; Rogers v. Missouri Pacific R. Co., supra. We have indicated that notwithstanding these rulings there still remain F.E.L.A. cases where the entry of judgment notwithstanding the verdict is justified. Dessi v. Pennsylvania R. Co., 3 Cir., 1958, 251 F.2d 149; Gill v. Pennsylvania R. Co., 3 Cir., 1953, 201 F.2d 718. But in those cases we found no rational basis for the verdicts. For the reasons above indicated, Chief Judge BIGGS and I think this is not such a case. Accordingly, the present judgment contrary to the verdict cannot stand.

■ It remains to consider the alternative order of the district court granting appellee's motion for a new trial in the event the judgment entered for the defendant should be set aside. This procedure was suggested and sanctioned by the Supreme Court in Montgomery Ward & Co. v. Duncan, 1940, 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147. Twice recently we have refused to interfere with such an alternative grant of a new trial although we have reversed the accompanying judgment n.o.v. Menetti v. Evans Construction Co., 3 Cir., 1958, 259 F.2d 367; Peters v. Smith, 3 Cir., 1955, 221 F.2d 721. Whether in an extreme enough case there might be justification for a simultaneous reversal of both orders we need not decide. For in the circumstances of this case the ruling that the verdict was so contrary to the weight of the evidence that it could not justly stand was within the permissible exercise of judgment and discretion on the part of the trial judge.

We have recently had occasion to contrast the role of a trial judge in passing on a motion for judgment n.o.v. with his role in deciding a motion for a new trial. Magee v. General Motors Corp., 3 Cir., 1954, 213 F.2d 899. The one motion requires a judge to determine whether the evidence and justifiable inference most favorable to the prevailing party afford any rational basis for the verdict. The other requires that the trial judge evaluate all significant evidence, deciding in the exercise of his own best judgment whether the jury has so disregarded the clear weight of the credible evidence that a new trial is necessary to prevent injustice.

In this case, citing the Magee case, the trial judge made clear his understanding of the difference between these two functions. In addition the trial judge's analysis of the evidence indicated sufficient basis for his conclusion as to the weight of the evidence and his conviction that an unjust verdict had been rendered.

While the opinion below discusses the evidence on several issues, we point particularly to the court's analysis of the evidence on the critical issue whether the back injury for which appellant is suing did or did not occur during the riveting operation in controversy. At the trial appellant testified that he had experienced sudden pain in his back while riveting the step, and that he then told his foreman, "I think I have a cold in my back. I hurt the back." He also testified that he repeated his complaint when he reported to work the next day. However, appellant's helper in this riveting operation testified that appellant made no complaint at the time of the riveting. The foreman categorically denied that appellant had said anything to him about his back on the afternoon in question or the next day. Even more striking is appellant's own statement at an administrative hearing conducted by the employer with reference to the al-

leged injury. On that occasion appellant testified that "when finished with this work I did not feel any pain in my back." It was not until after he got home, according to his testimony at that time, that he noticed what he thought was a cold in his back. Appellant also testified in the trial of the present case that he was permitted by his foreman to sit around without working because of his back condition on the day after the riveting incident. This too is directly contrary to a statement he made during the employer's administration investigation, and is also denied by the foreman.

This matter of immediate pain was very important because the medical testimony indicated that when a twisting such as appellant described causes a protrusion of an invertebral disc, the individual experiences sudden sharp pain. Yet, appellant's story of such immediate pain and his prompt report thereof, as related at the trial, was contradicted not only by other witnesses but also by his own earlier statement. Moreover, the medical testimony indicated that appellant's condition might easily have resulted from some ordinary mishap in the routine of normal daily activity.

Such considerations may quite properly induce a trial judge to grant a new trial. In their light, we have concluded that the trial court did not abuse its discretion in ordering a new trial.

Since Chief Judge BIGGS and I are agreed that the entry of judgment notwithstanding the verdict was error, and we are unanimously agreed that there was no abuse of discretion in the ruling on motion for a new trial, the judgment will be reversed and the cause remanded to permit a new trial as alternatively directed.

BIGGS, Chief Judge (concurring).

I agree with all that Judge HASTIE has written in respect to the reversal of the judgment n.o.v. I concur in the ruling that under the circumstances of this case the trial judge committed no error in granting a new trial.

McLAUGHLIN, Circuit Judge (dissenting in part).

In Rogers and the decisions following it the Supreme Court has been careful to clearly define the required minimum proof to take a plaintiff's Federal Employers' Liability case to the jury. A fair, full statement of the evidence here demonstrates that this plaintiff's proofs do not reach the Rogers standard. Therefore no justification exists to reverse the district court judgment. Under the guise of Rogers, but in reality discarding its entire base, the majority restores the jury verdict. In so doing it abandons the necessity of plaintiff presenting evidence from which the jury may conclude that negligence of the railroad played some part in causing the injury. Enforcement of the Rogers rule does not mean that evidence of an ordinary working sequence, absent employer negligence and plus a claimed ordinary injury, calls for jury decision in a Federal Employers' Liability suit.

Plaintiff has appealed first from the trial court's holding that the evidence was insufficient to have carried the case to the jury. In determining the sufficiency of the evidence of course the trial court and this court both must regard the evidence in the light most favorable to the plaintiff. Gold v. Groves, 3 Cir., 1950, 182 F.2d 767.

From the evidence it appears that plaintiff worked as a passenger car repairman at the Elizabethport facilities of defendant. On the afternoon of February 25, 1954 he was directed to do some riveting, assisted by another workman. This work entailed the placing of three rivets on the endstep of a baggage car, the step being for the use of brakemen engaged in switching cars. The step was a U-shaped frame, the ends of which fastened to the bottom of the car so that the base of the U formed the step. Another step was formed higher up by riveting a cross bar between the arms of the U, parallel to the base. To the center of this second step was to be riveted one end of a brace angling out

and down from where its other end was attached further under the bottom of the car.

There is doubt as to whether the first two rivets placed by the two workmen were those which fastened the higher step to the U-shaped frame or whether they were the ones fastening the frame to the car, in which case the second step would already have been riveted to the frame. Resolution of this uncertainty however is not material; at any rate it is certain that the third and last rivet was the one fastening the angled brace to the center of the higher step. The car was on its trucks which placed this step about 34″ off the ground. Consequently, in order to do the job plaintiff had to get down low to look upward while applying the twenty-five pound rivet gun and accompanying force upward to the underside of the step. This position was necessary whether plaintiff was underneath the car itself leaving the helper on the outside, or was on the outside with the helper consequently under the car, or even if both plaintiff and his helper were on the outside of the car.

During the period of about a minute when plaintiff was crouched on one of his heels with the other leg extended and was bending over to one side so as to look at the underside of the step while performing the riveting, he felt a pain in his back. Upon completing the job he crawled out from under the car, holding his back. He told the foreman he thought he had "a cold in the back", and did no other work that day besides putting away tools.

The next day, Friday, he went to work but did little because of the continuing backache. He spent much of the ensuing weekend in bed, but on Monday morning the pain was so much worse that he could not go to work. He sought and received medical treatment that day and had been under doctors' care more or less continuously down to the date of trial four years later. The condition was diagnosed as the protrusion of an intervertebral disc which caused muscular contracture and nerve irritation and left scar tissue after the disc receded; the continuing condition renders him unable to do the crouching, crawling, climbing and lifting required by his job classification although he has been able to work for fairly long stretches at the lighter tasks of welding and burning. Whenever heavier work was attempted his condition worsened.

I agree that the inference most favorable to the plaintiff is that he sustained the injury because he bent sideways from an already deeply crouched position, twisted his body somewhat in order to look up, and then held the rivet gun in place from this position, at the same time exerting an upward force against the recoil of the tool. It is inferable that this awkward working position was assumed because the car rested on its trucks and because it did not occur to the plaintiff to do the work from any other position.[1] Compare Tennant v. Peoria & P. U. Ry. Co., 1944, 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520. However, this does not dispose of the case for we are thereby only brought unavoidably to the question which the trial court did not pass on directly. That question is whether there was sufficient evidence to permit the jury to find that defendant had in fact been negligent.

The test prescribed by Rogers v. Missouri Pacific R. Co., 1957, 352 U.S. 500, 506, 507, 77 S.Ct. 443, 1 L.Ed.2d 493, and consistently applied by the Supreme Court[2] for ascertaining the propriety of

---

1. Of course, it is also inferable that even had the car been up on benches the injury might nonetheless have occurred.

2. Moore v. Terminal R. Association of St. Louis, 1958, 358 U.S. 31, 79 S.Ct. 2, 3 L.Ed.2d 25; Ferguson v. St. Louis-San Francisco Ry. Co., 1958, 356 U.S. 41, 78 S.Ct. 671, 2 L.Ed.2d 571; Honeycutt v. Wabash Ry. Co., 1958, 355 U.S. 424, 78 S.Ct. 393, 2 L.Ed.2d 380; Stinson v. Atlantic Coast Line R. Co., 1957, 355 U.S. 62, 78 S.Ct. 136, 2 L.Ed.2d 93; Gibson v. Thompson, 1957, 355 U.S. 18, 78 S.Ct. 2, 2 L.Ed.2d 1; McBride v. Toledo Terminal R. Co., 1957, 354 U.S. 517, 77 S.Ct. 1398, 1 L.Ed.2d 1534; Ringhiser v.

directing a verdict for the defendant in F.E.L.A. cases is whether the plaintiff has failed to produce any evidence from which the jury may conclude with reason that employer negligence played some part in producing the injury. This court has not understood the Supreme Court's pronouncements to require abrogation of the judicial function of assessing the evidence for sufficiency in supporting a verdict in plaintiff's favor.[3]

A finding of employer negligence in this case would depend upon whether the defendant, by directing plaintiff to perform the riveting, under the circumstances caused or created an unreasonable risk of harm to the plaintiff.[4] The unreasonableness of the risk of harm seems in turn properly to depend upon the foreseeability to defendant of the risk at the time plaintiff was directed to perform the riveting.[5]

Pertinent to the determination of foreseeability in this case are the surrounding circumstances. These included the fact that plaintiff was a skilled workman who knew how to use a rivet gun and who had riveting experience, though he had performed no riveting in some twelve or thirteen years prior to this time. His earlier experience had been with a rivet gun smaller than the one here used which, however, was identical except for the larger forces involved in its operation. Crucially important to the question of foreseeability of the type of harm which occurred[6] is the fact that plaintiff frequently worked from a crouching position underneath cars with a variety of tools requiring greater or less exertion. His work and that of his co-workmen often entailed heavy lifting. It appears that although this particular job was probably done more often with the car up on benches it was at least occasionally done while the car rested on its trucks. There is no evidence in the case of injuries of any kind sustained by personnel who had previously performed this particular task, either while the car was on benches or on its trucks.[7] Also

---

Chesapeake & Ohio Ry. Co., 1957, 354 U.S. 901, 77 S.Ct. 1093, 1 L.Ed.2d 1268; Arnold v. Panhandle & Santa Fe Ry. Co., 1957, 353 U.S. 360, 77 S.Ct. 840, 1 L.Ed. 2d 889; Thomson v. Texas & Pacific Ry. Co., 1957, 353 U.S. 926, 77 S.Ct. 698, 1 L.Ed.2d 722; Deen v. Gulf, Colorado & Santa Fe Ry. Co., 1957, 353 U.S. 925, 77 S.Ct. 715, 1 L.Ed.2d 721; Futrelle v. Atlantic Coast Line R. Co., 1957, 353 U.S. 920, 77 S.Ct. 682, 1 L.Ed.2d 718; Shaw v. Atlantic Coast Line R. Co., 1957, 353 U.S. 920, 77 S.Ct. 680, 1 L.Ed.2d 718; Herdman v. Pennsylvania R. Co., 1957, 352 U.S. 518, 77 S.Ct. 455, 1 L.Ed.2d 508; Webb v. Illinois Central R. Co., 1957, 352 U.S. 512, 77 S.Ct. 451, 1 L.Ed. 503.

3. Wergin v. Monessen Southwestern Ry. Co., 3 Cir., 1958, 258 F.2d 806; Dessi v. Pennsylvania R. Co., 3 Cir., 1958, 251 F.2d 149; Compare Gibson v. Elgin, Joliet & Eastern Ry. Co., 7 Cir., 1957, 246 F.2d 834; but see 355 U.S. 897, 78 S.Ct. 270, 2 L.Ed.2d 193 for Mr. Justice Frankfurter's comment on the Supreme Court's denial of certiorari in that case.

4. See Restatement, Torts § 282; 2 Harper and James, Torts § 16.9 (1956); Prosser, Torts § 30 (2d ed. 1955).

5. See Restatement, Torts § 284; 2 Harper and James, § 20.5; Prosser, §§ 30, 48.

6. To be distinguished from the question of foreseeability analyzed by this opinion is the separate, and to this case, irrelevant, foreseeability of harm to anyone (including the operator) caused by the improper active or primary use of the rivet gun by one with no prior or sufficiently recent experience. Here we are properly concerned only with the foreseeability of harm incident or secondary to the active use of the tool—that is, harm arising from the mere handling and positioning of the rivet gun.

   The distinction is illustrated by the relative foreseeability of injury by gunshot wound to those around a young boy to whom a firearm ready for firing is handed, and the foreseeability of injury occurring as a result of the youngster's dropping the gun onto a bystander's foot. Restatement, Torts, § 281, Illus. 2; 2 Harper & James, § 18.2.

7. Cf. Cahill v. New York, New Haven & Hartford R. Co., 2 Cir., 1956, 236 F.2d 410.

to be considered is the fact that the riveting took only a few minutes, while the job of placing the car up on benches would have required several hours.[8]

The factors just discussed all bear on the likelihood or unlikelihood of anticipating harm to the plaintiff arising from whatever bodily position was selected. But additionally it is to be remembered that nothing dictated the plaintiff's assuming the position he did for performing the work. His foreman was surely justified in leaving to plaintiff's discretion selection of the body position he would take for doing the work. For the skilled workman accustomed to heavy work and handling weighty tools this would be pretty much a matter of personal convenience. The man who did most of the riveting testified that whenever he did the job of riveting the end-step while the car was up on benches, he placed his foot on a stool and rested the gun on his knee; when the car was down on trucks he sat on a block. Pictures in evidence show a kneeling workman performing the riveting job. In any case it is necessary for the workman to bend over sideways to some extent.

In light of all the facts surrounding the occurrence of this accident it is plain that injury to the plaintiff from the very handling of the tool used in doing the job could not have been foreseen by the defendant. Under the circumstances there was no unreasonable risk of harm to the plaintiff; the proofs do not " * * justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury * * *." Rogers v. Missouri-Pacific R. Co., supra [352 U.S. 500, 77 S.Ct. 448]; see Herdman v. Pennsylvania R. Co., 1957, 352 U.S. 518, 77 S.Ct. 455, 1 L.Ed.2d 508. In that situation the judgment of the district court should be affirmed.

The second branch of this case concerns the allowance of a contingent new trial by the district court. Under the present facts such action was within the fair discretion of the trial judge.

8. Cf. 2 Harper and James, § 16.9; Prosser, § 30.