789 F.2d 253
 40 Fair Empl.Prac.Cas. 1252,
40 Empl. Prac. Dec. P 36,198
Carl F. BERNDT
v.
KAISER ALUMINUM & CHEMICAL SALES INC., Appellant in No. 85-1488.
Carl F. BERNDT
v.
KAISER ALUMINUM & CHEMICAL SALES INC.
Appeal of Carl F. BERNDT, in No. 85-1518.
 Nos. 85-1488, 85-1518.
 United States Court of Appeals,
Third Circuit.
 Submitted Pursuant to Third Circuit
Rule 12(6) March 20, 1986.
Decided May 6, 1986.
As Amended May 21, 1986.
 
 Ronald H. Surkin, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for Kaiser.
 Thomas P. Preston, Duane, Morris & Heckscher, Philadelphia, Pa., for Berndt.
 Before: HUNTER and MANSMANN, Circuit Judges and BROTMAN, District judge*
 OPINION OF THE COURT
 MANSMANN, Circuit Judge.
 
 
 1
 In these cross-appeals[1] after a jury verdict for the plaintiff in this case brought pursuant to Section VII of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. Sec. 621 et seq., we are asked to review, inter alia, two issues which have not yet been squarely dealt with by our court: 1) whether the district court is required to re-examine the elements of the plaintiff's initial prima facie case in ruling upon post-trial motions; and 2) whether unemployment compensation payments should be eliminated from the total amount of damages subject to pre-judgment interest. Because we find that the district court applied the correct legal standards in denying the post-trial motions and in including the unemployment compensation benefits in the amount subject to pre-judgment interest and finding no merit in any of the other allegations raised, we will affirm the district court in all respects. 629 F.Supp. 768.
 
 I. Procedural and Factual Circumstances
 
 2
 The plaintiff, Carl F. Berndt (Berndt), filed an amended complaint in this action alleging that he was unlawfully discharged from Kaiser Aluminum & Chemical Sales, Inc. (Kaiser) on account of his age during a reduction in labor force by Kaiser and additionally, that his discharge constituted a breach of contract.
 
 
 3
 The district court severed the contract action from the ADEA claim for purposes of trial. The jury returned a verdict on liability in favor of Mr. Berndt on the ADEA claim. The jury specifically found that age was a determinative factor in Kaiser's termination of the plaintiff and that the termination was willful. Summary judgment was granted by the court in favor of Kaiser on the contract claim.
 
 
 4
 By agreement of the parties, the issue of damages was submitted to the district court upon a stipulated set of facts which established the monetary value of certain items claimed as damages by Mr. Berndt. The court entered judgment for actual damages in the amount of $139,881.95. Deciding that the issue of willfulness had been improperly submitted to the jury, the district court did not award liquidated damages. The district court also determined that an award of prejudgment interest as well as an award of six months' front pay was appropriate. Kaiser thereupon filed a Motion for Judgment Notwithstanding the Verdict or for New Trial which was denied.
 
 
 5
 According to the stipulated facts, Mr. Berndt was born on June 19, 1923. He was employed by Kaiser at age 50 as a sales representative and worked in Kaiser's Eastern Region of the Building and Construction Products Division from November 22, 1973 until his termination, effective August 31, 1981. In December 1980, Mr. Berndt became a senior sales representative with Kaiser.
 
 
 6
 Prior to August 1981, Kaiser sold three product lines in its Eastern Region: Mobile Homes Products, Agricultural Roofing Products, and Highway Products. As a result of the difficult economic conditions existing in the industry, Kaiser made a decision to eliminate its Agricultural Roofing Product line, effective December 1981; to reduce its Mobile Homes Product line; and to close its Lancaster, Pennsylvania manufacturing plant. This cutback in products necessitated the reduction of the Eastern Region sales force from six to four salesmen.
 
 
 7
 During this time there were six salesmen in the Eastern Region who were assigned to specific product lines. The region was divided among the six by geographic territory. The men included Homer (Michael) Foote, assigned to Agricultural Roofing; Frank Papso, assigned to Mobile Home Products; Paul Dean, assigned to Highway Products, Mobile Home Products and Fabricated Products; Jack Fischer, assigned to Highway Products, Mobile Home Products and Agricultural Roofing Products; James C. Hannah, assigned to Highway Products and Agricultural Roofing; and Carl Berndt, assigned to Highway Products.
 
 
 8
 In May of 1981, Michael Venie, Regional Sales Manager for Kaiser's Eastern Region of the Building and Construction Product Division recommended to George Novotny, Division Manager, that Mr. Berndt be terminated and not be considered for a transfer to another job. Mr. Novotny presented Mr. Berndt's name for layoff to the corporate Personnel Committee. On August 31, 1981, Mr. Berndt was terminated by Kaiser. At the time of his termination, Mr. Berndt was 58 years old and was the oldest Highway Products salesman in the Building and Construction Division of Kaiser's Eastern Region.
 
 II. Kaiser's Appeal
 A. Burden of Proof
 
 9
 Kaiser maintains that Mr. Berndt failed to sustain his burden of proof in several respects: namely, 1) that Mr. Berndt failed to prove that he was qualified for one of the four remaining sales positions following the acknowledged labor force reduction; 2) that Mr. Berndt failed to prove he was less favorably treated than younger employees; 3) that Mr. Berndt failed to prove that age was a determinative factor in Kaiser's decision to terminate him; and 4) that Mr. Berndt failed to prove that Kaiser intentionally discriminated against him on account of his age.
 
 
 10
 The ADEA makes it unlawful for an employee "to discharge an individual ... because of such individual's age." 29 U.S.C. Sec. 623(1). In order to recover under the ADEA, a plaintiff must prove by a preponderance of the evidence that age was a determinative factor in the employer's decision. Duffy v. Wheeling Pittsburgh Steel Corp., 738 F.2d 1393, 1395 (3d Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 592, 83 L.Ed.2d 702 (1984). Because the allocation of proof in an ADEA case[2], similar to the allocation of proof under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 200(e), McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), has been set forth on numerous occasions by this court, we turn directly to the procedural problem this case presents.
 
 
 11
 The defendant's first two allegations regarding burden of proof focus upon whether or not Mr. Berndt has made out a prima facie case while his last two allegations are concerned with whether or not Mr. Berndt has met his ultimate burden of proving that age was "a determinative factor" in the employer's decision. See Smithers v. Bailar, 629 F.2d 892 (3d Cir.1980).
 
 
 12
 Under the McDonnell Douglas approach, the plaintiff has the initial burden of establishing a prima facie case of unlawful discrimination by a preponderance of the evidence. This is accomplished in a reduction-in-force case, such as before us, by the plaintiff showing "that he is a member of the protected class and that he was laid off from a job for which he was qualified while others not in the protected class were treated more favorably." Massarsky v. General Motors Corp., 706 F.2d 111 (3rd Cir.), cert. denied, 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983).
 
 
 13
 In this case after the plaintiff offered his evidence, the defendant moved for a directed verdict, challenging whether or not plaintiff had established a prima facie case. The district court denied the motion and directed the defendant to come forth with its rebuttal, or in the court's words, "the business reasons [it had] for [its employment] decision." The case was then fully tried before a jury on the merits.
 
 
 14
 Since the case was tried on the merits, we believe the question of whether a prima facie case was established "unnecessarily [evades] the ultimate question of discrimination vel non." United States Postal Services Board of Governors v. Aikens, 460 U.S. 711, 714, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983). The prima facie case creates a presumption of discrimination. The creation of a presumption by the prima facie case and the established allocation of burdens of production are intended only "to sharpen the inquiry into the elusive factual question of intentional discrimination." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 255 n. 8, 101 S.Ct. 1089, 1094 n. 8, 67 L.Ed.2d 207 (1981). It is within this context that the United States Supreme Court has written:
 
 
 15
 But when the defendant fails to persuade the district court to dismiss the action for lack of a prima facie case, and responds to the plaintiff's proof by offering evidence of the reason for the plaintiff's rejection, the fact finder must then decide whether the rejection was discriminatory within the meaning of Title VII. At this stage, the McDonnell-Burdine presumption "drops from the case," 450 U.S. at 255, n. 10, [101 S.Ct. at 1095 n. 10] and "the factual inquiry proceeds to a new level of specificity." Id. at 255. [101 S.Ct. at 1095]
 
 
 16
 Aikens, supra at 714-15, 103 S.Ct. at 1481-82. That is, the fact finder is in a position to decide the ultimate factual issue which in this case is whether Kaiser discriminated against Mr. Berndt. Moreover, "[w]here the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff did so is no longer relevant". Aikens, supra, at 715, 103 S.Ct. at 1482.
 
 
 17
 Thus, once the district court denied Kaiser's motion for directed verdict and ordered that the case proceed, the focus of inquiry shifted to deciding the ultimate discrimination issue. Accordingly, we find it unnecessary at this point in time to decide whether or not a prima facie case had, in fact, been established by the plaintiff.
 
 
 18
 Rather, we must review whether or not the plaintiff sustained his ultimate burden of proving discrimination, or in other words, that his age was a determinative factor in Kaiser's decision to terminate him. On this point, Kaiser argues that a review of the totality of the evidence indicates that Mr. Berndt did not sustain his ultimate burden of persuasion. Specifically, Kaiser maintains that the evidence showed that Mr. Berndt was consistently rated the lowest performing employee and that his discharge was based upon poor performance rather than his age.[3]
 
 
 19
 Because we are reviewing the denial of a motion for judgment notwithstanding verdict pursuant to Fed.R.C.P. 50(b) and the denial of a motion for new trial pursuant to Fed.R.C.P. 59, our scope of review must be delineated. We have explained the role of a trial judge in passing on a motion for judgment n.o.v. with the role in deciding a motion for new trial as follows:The one motion [judgment n.o.v.] requires a judge to determine whether the evidence and justifiable inference most favorable to the prevailing party afford any rational basis for the verdict. The other [new trial] requires that the trial judge evaluate all significant evidence, deciding in the exercise of his own best judgment whether the jury has so disregarded the clear weight of the credible evidence that a new trial is necessary to prevent injustice.
 
 
 20
 Zegan v. Central Railroad Company of New Jersey, 266 F.2d 101 (3d Cir.1959).
 
 
 21
 Reviewing an appeal with regard to the propriety of the judgment n.o.v., the appellate court applies the same standard as the trial court, Danny Kresky Enterprises Corp. v. Magid, 716 F.2d 206, 209 (3d Cir.1983). As we have said, on motions for a directed verdict and for judgment n.o.v., the movant must meet a strict test:
 
 
 22
 These motions require the judge 'to test the body of evidence not for its insufficiency to support a finding, but rather for its overwhelming effect. He must be able to say not only that there is sufficient evidence to support the finding, even though other evidence could support as well a contrary finding, but additionally that there is insufficient evidence for permitting any different finding.'
 
 
 23
 Massarsky, supra, at 119, citing Fireman's Fund Insurance Co. v. Videfreeze Corp., 540 F.2d 1171, 1177 (3d Cir.), cert. denied, 429 U.S. 1053 (1977). With regard to the motion for new trial we are to decide if there has been an abuse of discretion. Zegan, supra, at 105. See also Giordano v. McCartney, 385 F.2d 154, 155 (3d Cir.1967) (per curiam ).
 
 
 24
 Applying these standards of review to this case in the context of the judgment n.o.v., we conclude that the evidence and reasonable inferences drawn therefrom support the jury's finding on liability. Moreover, we can find no abuse of discretion on the part of the district court in its denial of Kaiser's motion for new trial.
 
 
 25
 The evidence at trial revealed that in August of 1981 Kaiser terminated the two oldest salesmen in the Eastern Region, Mr. Berndt being one of the salesmen. At the time of his discharge, Mr. Berndt was 58 years old and had 32 years of experience selling Highway Products. In fact, Mr. Berndt's responsibility at Kaiser was exclusively Highway Products.
 
 
 26
 The highway product line was not being cut back by Kaiser under the company's December 1981 plan which was designed to deal with the serious economic conditions existing at the time in the industry. Instead, under Kaiser's plan for its Eastern Region, Kaiser which previously had sold three product lines--Mobile Homes Products, Agricultural Roofing Products and Highway Products--decided to eliminate its Agricultural Roofing Product line, and to reduce its Mobile Home Product line. Under the plan, Kaiser was also required to reduce its sales force by two salesmen. Those salesmen who were retained by Kaiser were not only younger than Mr. Berndt, but had fewer years of experience selling Highway Products, the line Kaiser would maintain.
 
 
 27
 The evidence further indicated that in 1980 Mr. Berndt was promoted to a senior sales representative position with Kaiser. The promotion, according to the deposition testimony[4] of Mr. Arthur Wilson, a former Northeastern Regional Sales Manager and Mr. Berndt's former supervisor, would not be given to someone "who was not performing adequately." Furthermore, Mr. Berndt testified that during his entire tenure with Kaiser neither was his performance criticized nor was he told of any adverse performance appraisal. On this point, the documentary evidence from Mr. Berndt's personnel file which was presented at trial consistently rated him as being average or acceptable. Moreover, Mr. Berndt's name appeared on a plaque which Kaiser used to recognize salesmen who had shipped 100,000 pounds or more of product in any single month. Mr. Berndt's name appeared four times from May, 1976 through July, 1981.
 
 
 28
 In addition, we find the following evidence cited by the district court when reviewing Kaiser's motions for judgment n.o.v. and new trial as supporting a showing that age was a determinative factor in Kaiser's decision to terminate Mr. Berndt.
 
 
 29
 [There is] evidence, if believed, that from the time Michael Venie took over as regional sales manager for the Eastern Region at Kaiser, he treated plaintiff differently than he had been treated by Art Wilson, the former Regional manager, and that Mr. Venie behaved more harshly with plaintiff that he did with the other salesmen. Although Mr. Venie claims that his difficulties with plaintiff stemmed from differences in style, plaintiff contended that Mr. Venie's problems with him were because of his age and that Mr. Venie referred to plaintiff as 'old fashioned.'
 
 
 30
 Furthermore, evidence was presented by plaintiff that Kaiser had not followed its policy of attempting to place terminated, salaried employees in other employment or to rehire when possible; plaintiff was not rehired when a sales position was filled. Mr. Venie admitted at trial that he recommended that this policy not be applied to plaintiff. Defendant has attempted to argue that this was because of plaintiff's lack of qualification. However, the evidence at trial established at most that plaintiff was least qualified at the time of required reduction in force. Defendant admitted at trial that plaintiff was never rated an unqualified employee and that he was terminated only because of economic necessity.
 
 
 31
 Although Kaiser maintains that Mr. Berndt's discharge was based upon his poor performance rather than his age, this evidence adduced at trial and the reasonable inferences to be drawn therefrom indicate that age was "a determinative factor" in Kaiser's decision to terminate Mr. Berndt. Accordingly the district court correctly denied both Kaiser's motion for judgment n.o.v. and motion for new trial.
 
 B. Prejudgment Interest
 
 32
 The district court determined that Mr. Berndt was entitled to prejudgment interest on backpay, medical expenses and automobile cost reimbursement. Prejudgment interest, calculated at eight percent simple interest, was awarded from November, 1981 to December, 1984. The purpose of prejudgment interest is "to reimburse the claimant for the loss of the use of its investment or its funds from the time of the loss until judgment is entered." Arco Pipeline Company v. SS Trade Star, 693 F.2d 280, 281 (3d Cir.1982).
 
 
 33
 The parties stipulated that Mr. Berndt received $15,900.00 in unemployment compensation. Kaiser argues that the district court erred in failing to deduct the unemployment compensation benefits from the back pay award in computing the amount of prejudgment interest since this has the effect of making plaintiff more than "whole", a result not contemplated under the provisions of the ADEA.
 
 
 34
 As the district court noted in its opinion, we have not ruled on the precise issue raised by Kaiser. We have, however, held in Craig v. Y & Y Snacks, Inc., 721 F.2d 77 (3d Cir.1983), that unemployment benefits may not be deducted from back pay awards in Title VII cases, and in McDowell v. Avtex Fibers, Inc., 740 F.2d 214 (3d Cir.1984), vacated and remanded on other grounds, --- U.S. ----, 105 S.Ct. 1159, 84 L.Ed.2d 312 (1985), we held that there is to be no such deduction from back pay awards in ADEA cases. The underlying rationale for these decisions is that unemployment compensation is akin to a collateral benefit which is ordinarily not deducted from a plaintiff's recovery. As we stated in Craig, "[u]nder the collateral benefit rule, payment which a plaintiff receives for his or her loss from another source is not credited against the defendant's liability for all damages resulting from its wrongful or negligent act." Craig, supra, at 83. In other words, "a wrongdoer should not get the benefit of payments that come to the plaintiff from a source collateral to the defendant." Id. at 83. Because this same reasoning applies to the award of prejudgment interest, Kaiser's argument fails.
 
 C. Jury Instructions
 
 35
 When charging the jury, the district court used a definition for "willfulness" (liquidated or double damages) which at the time accurately reflected the law of this Circuit. Specifically, the court charged the jury in accordance with our decision in Wehr v. Burroughs Corp., 619 F.2d 276, 283 (3d Cir.1980), which held that for "willfulness" purposes it was "sufficient to prove that the company discharged the employee because of age and that the discharge was voluntary and not accidental, mistaken or inadvertent." Wehr, supra, at 283.
 
 
 36
 After the jury returned its verdict but before final judgment was entered, however, the United States Supreme Court decided Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), which more stringently defined the term "willfulness". Under Thurston, willfulness will be found only if the employer "knew or showed reckless disregard for the matter of whether its conduct is prohibited by the ADEA." Thurston, supra, at 624. In its memorandum opinion dated February 21, 1985, the district court, acknowledging the newly enunciated Thurston standard, not only determined that its charge on "willfulness" was incorrect, but also decided that the evidence was insufficient initially to have submitted the issue of willfulness to the jury. Accordingly, the court determined that the liquidated damages awarded by the jury were inappropriate, vacated this award and entered final judgment only on the damages awarded by the jury in relation to its decision on liability.
 
 
 37
 Kaiser now argues that the definition of "willfulness" given to the jury which only required a finding that Kaiser's act be voluntary made it "easier for the jury to find that Kaiser's 'discriminatory conduct' was willful than it was to find that the conduct was discriminatory in the first place." This allegedly confusing situation, asserts Kaiser, was so prejudicial that it merits a new trial with respect to both liability and willfulness.
 
 
 38
 Kaiser's argument fails, however. From the express language of the jury instructions, it is evident that the jury was clearly instructed to separate the questions of liability from willfulness. This being so, Kaiser cannot claim that it was prejudiced by the subsequent change in the law evidenced in Thurston.
 
 
 39
 In this regard, the district court offered the following instructions:
 
 
 40
 The plaintiff claims that age was a determinative factor in his being terminated. The defendant contends that Berndt was terminated for business reasons unrelated to his age. You have to decide if these reasons were what we say pretextual, that is whether they were a cover-up for a violation of the law, that is, if the plaintiff has proved by a preponderance of the evidence that age made a difference. If you determine that, then you will have to decide, if it was willful; that is if it was voluntary and not a result of accident or mistake or if it was done with a reckless regard of consequences.
 
 
 41
 Again, the court reiterated to the jury that it was to decide the issue of liability first and only if finding such liability existed, was it then to decide the issue of willfulness:
 
 
 42
 Therefore, to summarize, in order to prove his case, Mr. Berndt must prove by a preponderance of the evidence that he was in the protected age group, that's agreed, that's stipulated. That he was qualified for the position of sales representative and he was performing the job in a way satisfactory to his employer and that his age was a determining factor in the decision to discharge him instead of someone else ...
 
 
 43
 Now, there's one more question that I'll be asking you. I'm going to send out with you what we call special interrogatories to the jury. They're just questions. And the first question you'll be asked to answer will not surprise you, it will be: Do you find that plaintiff, Carl Berndt has proved by a preponderance of the evidence that his age was a determinative factor in defendant, Kaiser Aluminum and Chemical Sales, Incorporated decision to terminate him? You'll answer that yes or no.
 
 
 44
 Now, if your answer is no, that will end your deliberations. If your answer is yes, then you must determine whether the discrimination by Kaiser was willful.
 
 
 45
 From these excerpts it is obvious that the district court kept the issues of liability and willfulness separate and distinct. The jury was appropriately informed that its decision was to be a twofold one: that is, first to determine liability, and only if liability had been proven, then to decide willfulness. Since there is a presumption that a verdict is rendered in accordance with the instruction of the trial judge. Klink v. Harrison, 332 F.2d 219, 225 (3d Cir.1964), we find no merit in Kaiser's contention that the jury was misled or confused by being instructed simultaneously on the issues of liability and willfulness. Moreover, because the district court instructed the jury to handle the issues separately, the court was able to remove the willfulness issue from the jury and to vacate judgment as to that issue without disturbing the liability verdict.
 
 D. Front Pay
 
 46
 Kaiser argues that the court's award of front pay to the plaintiff was erroneous for two reasons: namely, 1) the award of future lost earnings is too speculative and 2) the availability of such an award would discourage settlement of age discrimination claims. Our recent decision in Maxfield v. Sinclair Intern., 766 F.2d 788 (3d Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986), is dispositive of this issue. In Maxfield we held that while reinstatement is the preferred remedy to avoid future lost earnings, it may not be feasible in all cases. Furthermore, we indicated that when circumstances prevent reinstatement, front pay may be an alternate remedy. Maxfield, supra, at 796.
 
 
 47
 In this case the district court specifically decided: "In the circumstances, [reinstatement] is undesirable if not impossible. The relationship between plaintiff and Kaiser has been so damaged by the litigation that a continued working relationship for the four months remaining until plaintiff will retire is not feasible." Given this determination on the part of the district court, we find no error in the award of front pay to plaintiff.
 
 III. Mr. Berndt's Appeal
 
 48
 Mr. Berndt's cross-appeal from the grant of summary judgment in favor of Kaiser on his contract claim is, by his own designation, a conditional one. That is, Mr. Berndt offers that since the recoverable damages on the contract claim are coincident with the damages recoverable under the ADEA, we need not reach this issue unless we first determine that a new trial is necessary under the ADEA claim. Thus, by affirming the district court with regard to its decision on Kaiser's motion for judgment n.o.v. and new trial, we need not address Mr. Berndt's contract claim. Accordingly, the district court's decision on summary judgment stands firm.
 
 IV.
 
 49
 For the foregoing reasons, the order of the district court dated July 3, 1985, denying the defendant's motions for judgment notwithstanding verdict and new trial will be affirmed. Moreover, the district court's grant of summary judgment on December 17, 1984, in favor of the defendant on the contract claim will also be affirmed.
 
 
 
 *
 The Honorable Stanley S. Brotman, United States District Court for New Jersey--Camden, sitting by designation
 
 
 [1]
 The defendant-employer appeals from the denial of its Motion for Judgment Notwithstanding the Verdict and its Motion for New Trial in relation to the ADEA claim. The plaintiff-employee appeals from the denial of summary judgment on his employment contract claim
 
 
 [2]
 In this regard, there is a three-part allocation of proof with respect to liability: 1) the plaintiff bears the burden of first establishing a prima facie case of unlawful discrimination; 2) if the plaintiff succeeds in making out the prima facie case, then the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employer's rejection and 3) if the employer articulates such a reason, the burden of production then shifts back to the plaintiff who must establish either that the employer's proffered reason is a pretext or that the employer's decision was more likely motivated by some discriminatory reason. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff's burden of showing pretext merges at the final stage with "the ultimate burden of persuading the court that [the employee] has been the victim of intentional discrimination. [The employee] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Duffy v. Wheeling Pittsburgh Steel Corp., supra, at 1396, citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)
 
 
 [3]
 Kaiser raises as a separate and distinct issue whether the trial court erred in ruling that the jury's verdict on liability was supported by the weight of the evidence. This evidentiary question is inextricably contained and decided in our present discussion, and thus, the issue need not be separately addressed
 
 
 [4]
 Mr. Wilson's deposition testimony was read into evidence as a part of the plaintiff's case-in-chief