Samuel B. PETERS, Plaintiff,

v.

Francis R. SMITH, Collector of Internal Revenue, Defendant,

United States of America, Intervenor.

No. 13667.

United States District Court
E. D. Pennsylvania.

Aug. 5, 1954.

William P. Thorn, Duane, Morris & Heckscher, Philadelphia, Pa., for plaintiff.

H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe, Kurt W. Melchior, Sp. Assts. to Atty. Gen., W. Wilson White, U. S. Atty., Norman Kron, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

KIRKPATRICK, Chief Judge.

This action is to recover $13,108.39, paid to the Collector of Internal Revenue as an income tax for the year 1946. The United States has intervened with a claim against the taxpayer for $1,589.68, unpaid balance of income tax for the same year.

The case was tried to the Court and jury and a special verdict favorable to the plaintiff was returned. The defendant now moves to set aside the jury's answers to the interrogatories, and both sides move for judgment.

There is no conflict of testimony as to any evidentiary fact. The only question is whether certain payments made to the taxpayer in 1946, by his former employer, were gifts or compensation for services, within the meaning of the Internal Revenue Law.

In 1942 the taxpayer Samuel B. Peters, who had been employed by a Philadelphia department store for 41 years, was retired by the company—not at his request. At the time of his retirement he was superintendent of delivery earning $68 a week and was 58 years old. The Company deemed that by reason of his age and other considerations he was no longer useful. Peters was told that he would be put on a pension of $25 a week for as long as he lived. From 1942 until February 1946 he received weekly payments of $25 each, which he reported as income in his tax returns.

In 1946 the Company funded the plaintiff's pension by buying a single premium annuity contract under which he would receive $25 a week from the Insurance Company for his life. The contract cost $19,370.49, and since Peters would have to report that amount as taxable income, the Company, as part of the transaction, took steps to assume the tax burden itself. It made out a check to Peters for $13,050.00, (an amount calculated to give Peters his annuity payments clear of tax) and sent it to him by messenger. Peters was told by the messenger that he was expected to endorse the check and return it. He endorsed it and the messenger took it away. This transaction took place in January of 1946. Peters filed his 1946 income tax return without reporting either the cost of the annuity policy or the tax payment and sometime later he received a check from the Government in the amount of $12,822.90 as a tax refund. Obviously, the Company had sent the Collector the check which Peters had endorsed, as a payment of his estimated tax, and when the return showed no tax due, a refund was made.

Later on, Peters filed an amended return for 1946, reporting both the cost of the annuity and the check as income and paid the amount of his refund back to the Collector. The balance, due to the higher rate of tax from the addition of his other income, has not been paid.

Still later, Peters reverted to his earlier position that the payments were not taxable and brought this suit.

The first two interrogatories submitted to the jury were (1) "Was the annuity contract a gift to Mr. Peters?" and (2) "Was the check for $13,050.00 a gift to Mr. Peters?". The jury answered "Yes" to both questions.

I am of the opinion that there is not sufficient evidence to sustain an affirmative answer to either question and that judgment must, therefore, be entered for the defendant. This conclusion is reached upon the following basis. (1) There is no evidence on which a finding can be made that the weekly payments of $25 made to Peters from 1942 to 1946 were anything but installments of an ordinary employee's pension. On the contrary there is affirmative evidence to the effect that, prior to the annuity transaction, both parties considered the payments, not as gifts, but as compensation—taxable income to the plaintiff and deductible business expense to the

defendant. (2) The purchase of the annuity by the Company was merely a conversion or shifting to an insurance company of the identical obligation which the Company assumed when it retired Peters and promised to pay him $25 a week for life. It was not intended to and did not benefit Peters financially but was made entirely from motives of self interest. Looking at it from the standpoint of the tax law, it amounted to a cash payment to Peters in lieu of the pension that the Company had undertaken to pay him. (3) Although the check for $13,050 was made the subject of a separate interrogatory to the jury, it was in reality only a part of the funding transaction and was no more a gift than was the purchase of the annuity. Considering the two together, the Company was actually paying $32,420.49 to accomplish a specific purpose, namely, to see that Peters would get the $25 a week for life which it had promised him, without diminution through increased tax liability. The whole transaction was in the interest of the Company and although it took nothing away from Peters, it added nothing to what the Company was already, morally at least, obligated to pay him.

■ Thus, inasmuch as the two payments involved in the case were merely intended by the employer to adopt a more advantageous (to it) method of discharging an obligation which it had already assumed, the whole issue goes back to the question whether in promising $25 a week for life the Company intended the payments as compensation for past services or as a pure gift. The burden of proof was upon the taxpayer to establish his contention by clear proof that the parties intended that result and acted unequivocally in accordance with such intention. As a matter of fact, taking the transaction as a whole, evidence that a gift was intended is totally lacking.

It is quite true that there was no legal obligation on the part of the employer to pay Peters any pension at all on his retirement. However, the fact that some 40 retired employees were receiving pensions would create a reasonable expectation on the part of an employee retired at 58 after 41 years of service which would come close to importing a moral obligation into the situation. It is also true that the pension promised Peters was not mathematically calculated upon his length of service and compensation at the time of retirement. But the testimony was that the Company had no established system. It did, however, regularly and customarily pension retired employees on what it considered a fair basis for a pension taking into consideration the circumstances of each case. It is also true that the fact that Peters had some earning power left after his retirement, as well as his financial circumstances, were considered by the Company; but where an employer pensions, as a matter of practice, its employees upon an ad hoc basis, the various factors that enter into fixing the amount are as much evidence of an intention to pay compensation for past services as of an intention to make a gift.

■ While the main consideration in these cases is the intent of the payor, the understanding of the recipient is relevant. It appears from the plaintiff's own testimony that he never understood that he was receiving a gift from the Company either by way of the weekly payments or the annuity or the tax check. In fact, he appears to have thought he was receiving a gift from the Government—a logical enough view, because that is what it would amount to if this verdict should stand. On the other hand, the intention of the Company to pay the pension as compensation for services can hardly be disputed. The original arrangement with Peters was for a "pension". The Company deducted the pension payments in its tax returns. When it bought the annuity it deducted that amount as well, which it could have done only on the basis that the weekly payments were compensation. It appears beyond all question that the fund-

ing of the pension was to gain a financial advantage for itself and, as has been seen, the motivating intent in making the tax payment was to carry out the plan without disturbing Peter's status quo.

In the third interrogatory the Court submitted to the jury the question "What was the fair market value of the annuity contract?", and the jury answered "$14,-500". In view of the provision of Section 22(b) (2) (B) of the Internal Revenue Code, 26 U.S.C. § 22(b) (2) (B), that "the amount contributed by the employer for such annuity contract * * * shall be included in the income of the employee * * *", the submission of this question to the jury was erroneous. There was no dispute that the amount contributed by the employer was $19,-370.49 and the finding of the jury is, therefore, set aside. The amount to be included in the plaintiff's taxable income is the cost of the annuity.

There is no evidence to support the plaintiff's contention that the procedure adopted in connection with his pension was in any way part of a qualified pension plan as provided for by Section 165 of the Internal Revenue Code, 26 U.S.C. § 165. The testimony shows that there was no uniform pension plan and no intention on the part of the Company to adopt a "qualified" plan, and no employee was assured of a pension on retirement, that not only the age of retirement but whether an employee would be retired at any age depended upon entirely different considerations in the cases of various employees and that payments to be made to each employee were worked out without relation to payments made to others.

The plaintiff's motion for judgment is denied.

The defendant's motion to set aside the verdict and for judgment is granted.

The intervenor's claim will be allowed.

An appropriate form of judgment may be submitted.