J. Aron & Company, Inc. v. Commissioner.
J. Aron & Co. v. Commissioner
Docket No. 89398.
United States Tax Court
T.C. Memo 1963-164; 1963 Tax Ct. Memo LEXIS 180; 22 T.C.M. (CCH) 788; T.C.M. (RIA) 63164; June 12, 1963
Thomas B. Lemann, 1424 Whitney Bldg., New Orleans, La. *181 , for the petitioner. Charles B. Sklar, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: Respondent determined a deficiency in petitioner's income tax for 1954 in the amount of $12,116. The sole issue presented for our decision is whether payments made by petitioner in the total amount of $23,300 to the widow of an officer and employee are deductible as ordinary and necessary business expenses under section 162(a) of the Internal Revenue Code of 1954. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioner was incorporated under the laws of the State of Louisiana in 1915 and is engaged in the coffee and sugar business. Its principal place of business is located at New Orleans, Louisiana. J. Aron & Company, Inc., began its sugar operations in 1933 and maintains a sugar refinery located at Supreme, Louisiana. Petitioner filed its income tax return for 1954 with the director at New Orleans, Louisiana. During May 1934, petitioner employed J. T. Landry who had had wide experience in sugar processing operations. He was in charge of petitioner's entire sugar refining operation *182 for a period of approximately 20 years. At the time of his death J. T. Landry held the office of operational vice president of J. Aron & Company, Inc., and was general manager of its sugar refinery. Neither J. T. Landry nor his wife Lelia P. Landry owned any of petitioner's stock nor was either of them at any time a member of its board of directors. On November 7, 1954, J. T. Landry died as a result of a stroke suffered while performing his work on behalf of the petitioner. He was 55 at the time of his death. His gross salary at the time of his death was $1,400 per month. During 1954 he received an additional payment of $20,500 from petitioner representing his year end bonus for 1953. The board of directors of J. Aron & Company, Inc., held a meeting on December 13, 1954, at which the payment of year end bonuses totaling $390,290 was authorized. The minutes of the meeting of petitioner's directors held December 13, 1954, state, in pertinent part, as follows: The question of year-end bonuses was then discussed. There was presented to the directors a listing of proposed individual bonus amounts totaling $390,290.00. This listing was prepared by the Personnel Director with the guidance *183 of Vice-President W. B. Burkenroad, Jr. With no major alteration, the individual bonus amounts were in line with those paid in previous years, except for a few merit increases. The Chairman stated that, in fixing compensation, consideration should properly be given to accomplishment of a satisfactory volume of business handled despite highly unusual market conditions, to the financial results for the year, and to the strain and responsibility placed on the executives of the Company. Thereupon, on motion duly made, seconded and unanimously passed, it was RESOLVED, That year-end bonuses to executives and employees in the total sum of $390,290.00 be declared payable out of the operations for the year 1954. FURTHER RESOLVED, That the total bonuses amount of $390,290.00, as set forth, shall be accrued on the books of account as a charge to 1954 operations, but that actual cash payment to employees may be delayed up to, but not beyond 75 days from the end of the year. Pursuant to the foregoing resolution adopted by petitioner's board of directors, it issued two checks on January 3, 1955, to Lelia P. Landry, the widow of J. T. Landry. One of these checks was in the amount of $2,800, *184 an amount equivalent to J. T. Landry's salary for 2 months, and one was in the amount of $20,500, an amount equal to his bonus for 1953. The two above-mentioned checks were sent to Lelia P. Landry accompanied by the following letter from William B. Burkenroad, Jr., petitioner's executive vice president: In line with my recent telephone conversation with you, enclosed you will find a check for $2,800.00 for services rendered through 1954, also one for $20,500.00, representing the usual bonus. We are pleased that we have been able to arrange these checks as per above, and as expressed to you, it has given all of us great pleasure in granting such recognition on behalf of J. T. for his long years of splendid service and untiring efforts in the interest of our Company. The total compensation paid to J. T. Landry by J. Aron & Company, Inc., during the years 1934 to 1953, inclusive, consisting of salary and year end bonuses, was as follows: Year
Salary
Bonus
Total
1934
$ 5,000
0
$ 5,000
1935
5,000
0
5,000
1936
6,000
0
6,000
1937
6,000
0
6,000
1938
6,000
0
6,000
1939
6,000
0
6,000
1940
6,000
$ 1,057
7,057
1941
6,000
5,000
11,000
1942
6,500
5,000
11,500
1943
7,200
5,000
12,200
1944
7,200
5,000
12,200
1945
7,600
5,000
12,600
1946
8,400
10,000
18,400
1947
12,000
15,000
27,000
1948
12,000
15,000
27,000
1949
12,150
17,000
29,150
1950
13,800
17,000
30,800
1951
14,145
17,000
31,145
1952
14,490
17,400
31,890
1953
15,070
20,500
35,570
*185 Petitioner, during the 10-year period immediately preceding the death of J. T. Landry, established a practice of making voluntary payments to the surviving widows (or the estate or next of kin) of certain of its deceased officers and employees. The payments, if any, which were made by petitioner to the widows (or the estate or next of kin) of its officers and employees who died during the period October 19, 1944 to September 20, 1961, inclusive, were as follows: Bonus
Annual
for
salary
year prior
Date of
at date
to date
Name
Position
death
of death
of death
Louis P. Pacquet
Sales Mgr.
10/19/44
$ 6,250.00
$ 1,000.00
Herbert Alwes
Asst. Mgr.
2/20/45
3,300.00
300.00
Louis T. Bourgeois
Chief Engineer
3/18/49
3,600.00
850.00
Adam F. Huhner
Coffee Tester
10/30/49
5,300.00
1,500.00
Geo. W. Davila
Sec.-Comp-
1/ 2/50
10,000.00
9,000.00
troller
Vivian Shoemaker
Cashier
7/17/50
2,280.00
400.00
Edmord R. Jackson
Porter
12/30/50
1,920.00
325.00
W. W. Callier
Asst. Mgr.
7/ 8/51
6,300.00
3,000.00
Harold Jordy
Weigher
11/10/52
3,376.80
565.00
Arthur Brooks
Porter
4/27/54
2,160.00
350.00
J. T. Landry
Vice-Pres.
11/ 7/54
16,800.00
20,500.00
Chas. W. Baylis
Sampler
9/ 9/57
2,400.00
430.00
Wm. B. Burkenroad
Vice-Pres.
2/14/58
40,000.00
60,000.00
Henry E. Stewart
Roaster
4/ 4/58
2,640.00
475.00
J. H. Schneider
Traffic Mgr.
9/26/58
7,500.00
4,250.00
E. E. Lafaye
Vice-Pres.
7/ 6/59
35,000.00
45,000.00
Albert A. Marx
Salesman
2/18/60
1,315.20
300.00
A. J. Simoneaux
Documentation
9/20/61
6,300.00
810.00
Clerk
*186 Remarks -
Name
Total
Payment
composition of payment
Payee
Louis P. Pacquet
$ 7,250.00
$ 2,219.00
Louise B.
Pacquet,
widow
Herbert Alwes
3,600.00
none
Single
Louis T. Bourgeois
4,450.00
none
Semi-retired at death
Adam F. Huhner
6,800.00
2,383.30
Bal. 1949 salary
plus bonus
Edith N.
Huhner,
widow
Geo. W. Davila
19,000.00
11,675.00
Bal. 1950 salary
$ 5,000
1/2 1949 bonus 4,500
15% of above 2,175
$11,675
Marie S.
Davila,
widow
Vivian Shoemaker
2,680.00
none
Single -
Long final illness
Edmord R. Jackson
2,245.00
none
Single
W. W. Callier
9,300.00
4,307.50
Bal. 1951 salary plus
$1,000
Dora L.
Callier,
widow
Harold Jordy
3,941.80
722.10
widower - Bal. of 1952
Misses
Janet &
Lespa
salary plus $300.00
Jordy
daughters
Arthur Brooks
2,410.00
203.68
Salary 4/28-5/31/54
Pearl S.
Brooks,
widow
J. T. Landry
37,300.00
23,300.00
Bal. 1954 salary plus
1953 bonus
Lelia P.
Landry,
widow
Chas. W. Baylis
2,830.00
150.00
No relation to salary
Long final illness
Amanda
Baylis,
widow
Wm. B. Burkenroad
100,000.00
none
No widow
Henry E. Stewart
3,115.00
400.00
No relation to salary
Daisy M.
Stewart,
widow
J. H. Schneider
11,750.00
6,125.00
Bal. 1958 salary plus
1957 bonus
Mae B.
Schneider,
widow
E. E. Lafaye
80,000.00
51,935.00
Bal. year's salary
plus $35,000.00
Julia B.
Lafaye,
widow
Albert A. Marx
1,615.20
546.00
5 months' salary
semi-retired
Claire B.
Marx, widow
A. J. Simoneaux
7,110.00
500.00
Single - aged sisters &
stepmother surviving
Estate of
A. J.
Simoneaux
*187 Petitioner's purposes in making the abovelisted payments to the widows, estates, or next of kin of its deceased employees and officers were to provide an additional incentive to its employees, to create high employee morale, and to assist it in attracting and retaining the services of key executives. Petitioner had paid J. T. Landry the full amount of salary due him through the date of his death and was under no legal obligation to pay him any additional compensation. It was under no contractual obligation with either J. T. Landry or his widow to make any further payments of any kind to her or to his estate. No income or social security tax was withheld by petitioner from the payments totaling $23,300 made to Lelia P. Landry on January 3, 1955. Petitioner maintained during 1954 a profitsharing and retirement plan under which 125 of its employees were covered. The payments made by it to Lelia P. Landry on January 3, 1955, were not made from its profit-sharing and retirement plan and were not intended to be in lieu of such payments or to be in any way connected therewith. The total payments in the amount of $23,300 made by petitioner to Lelia P. Landry on January 3, 1955, were *188 made in furtherance of its policy of making payments to the widows of its deceased employees for the purpose of enhancing employee morale and attracting qualified personnel, as well as in furtherance of its policy of paying substantial year-end bonuses as additional compensation to its officers and employees. J. Aron & Company, Inc., made the payments for the dual objective of paying additional compensation for the highly valuable services rendered it by J. T. Landry during the prior 20-year period and of providing his widow with some economic security during the period immediately following her husband's death. Petitioner kept its books and prepared its income tax returns on an accrual basis. It accrued on its books for 1954 the payments totaling $23,300 made to the widow of J. T. Landry and claimed this amount as a deduction on its 1954 income tax return. The respondent disallowed the deduction claimed by petitioner in the amount of $23,300 on its income tax return for 1954. Opinion Petitioner contends that the total amount of the two checks issued by it on January 3, 1955, to Lelia P. Landry constitutes an ordinary and necessary business expense within the meaning of section *189 162(a) of the 1954 Code [1] and was properly deducted by it on its income tax return for 1954. The respondent claims that since the payments in question were made voluntarily, they in no way constitute compensation for services rendered by J. T. Landry and cannot qualify as ordinary and necessary business expenses. We are of the opinion that the issue here involved is controlled by our decision in Fifth Avenue Coach Lines, Inc., 31 T.C. 1080, reversed on another issue, 281 F. 2d 556, certiorari denied 366 U.S. 964. The taxpayer there paid the widow of its deceased president an amount equal to his salary for a period of 31 months. The total payments amounted to $90,416, whereas the deceased officer's salary at the time of his death was $35,000 per year. We there found that the payments were made partly as compensation *190 for past services, party for the support of the deceased officer's widow, and generally served to enhance the morale of its employees. We sustained the deduction claimed by the taxpayer for the total payments made by it to its deceased president's widow, stating: The motives for making the payments here involved are ambiguous and multiple; such is often the case. In Peters v. Smith, 221 F. 2d 721, 725 (C.A. 3, 1955), it was noted that "the employer in providing the questioned payments did not indicate unequivocally whether such action was intended as additional compensation for past services, or merely as an expression of a philanthropic attitude, or as a bid for employee good will, or as some combination of these." In the instant case, we find that the payments to Sheeran's widow were intended in part as additional compensation for past services rendered by Sheeran, in part to show gratitude for such past services, and in part to aid in the support of Sheeran's widow. * * *
Undoubtedly, the petitioner's directors in authorizing the payments to Sheeran's widow were motivated in part by a sense of gratitude for Sheeran's past services and the need for aiding the *191 support of Sheeran's widow. To the extent they were so motivated, the payments here in question may have been, as the respondent contends, gratuitous. However, to be deductible, the payments need not be in the nature of additional compensation. * * * Therefore, although the directors of J. Aron & Company, Inc., in authorizing the payments made by it to the widow of J. T. Landry were motivated in part by a desire to contribute to the support of his widow, the facts that they were partly so motivated and that the payments partially constituted gifts to Lelia P. Landry do not militate against their character as ordinary and necessary business expenses. I. Putnam, Inc., 15 T.C. 86; Fifth Avenue Coach Lines, Inc., supra; Peters v. Smith, 221 F. 2d 721. The payments here in question were equivalent to the salary of J. T. Landry for 2 months plus an amount equal to the year end bonus he previously had received for 1953. He died with only 2 months remaining in the calendar year 1954. Petitioner has shown that it followed the practice of paying all of its officers and employees substantial year end bonuses as additional compensation over and above *192 their salaries. J. T. Landry had received substantial year end bonuses from petitioner each year for approximately 15 years prior to his death. Petitioner has also established that it followed a policy of making substantial payments to the widows, estates, or next of kin of deceased officers and employees. This policy had been followed for approximately 10 years prior to the time the payments here in question were made. The record further indicates that Landry was eminently qualified for the position he held in petitioner's employ and that his contributions to its successful operations were invaluable. Thus, despite the absence of any contractual obligation on the part of petitioner to make any further payments beyond the date of Landry's death, we are convinced from the record that a very substantial part of the $23,300 amount paid to Lelia P. Landry was intended to constitute additional compensation for the services he had rendered during the preceding 20 years and that any part thereof which did not represent such compensation was paid pursuant to its policy of making substantial cash payments to the widows of deceased employees for the purposes of attracting and retaining qualified *193 personnel and furthering favorable employee relationships. For the foregoing reasons we are of the opinion that the payments totaling $23,300 constituted ordinary and necessary business expenses of petitioner within the meaning of section 162(a) of the 1954 Code. McLaughlin Gormley King Co., 11 T.C. 569; Fifth Avenue Coach Lines, Inc., supra. The respondent on brief makes the further argument that even if the expenditures in question are properly deductible under the provisions of section 162(a) of the 1954 Code, that section 404(a) of the Code [2] nevertheless operates to deny the deduction of the amount involved because, although accrued by petitioner on its books for 1954, it was not actually paid by petitioner during 1954. Section 404(a) applies to "compensation * * * paid or accrued on account of any employee under a plan deferring the receipt of such compensation." None of the deferred compensation plans specified in paragraphs (1) through (5) of section 404(a) were connected in any way with the transaction here in question. Although petitioner had established a retirement and deferred compensation plan, we have found as a fact that none of the payments *194 here involved were made therefrom or were connected with such plan. Therefore, we are unable to find any merit in the contention that section 404 of the Code has application to the transaction before us. *195 Decision will be entered under Rule 50. Footnotes
1. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - (1) a reasonable allowance for salaries or other compensation for personal services actually rendered;↩
2. SEC. 404. DEDUCTION FOR CONTRIBUTIONS OF AN EMPLOYER TO AN EMPLOYEES' TRUST OR ANNUITY PLAN AND COMPENSATION UNDER A DEFERRED-PAYMENT PLAN. (a) General Rule. - If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under section 162 (relating to trade or business expenses) or section 212 (relating to expenses for the production of income); but, if they satisfy the conditions of either of such sections, they shall be deductible under this section, subject, however, to the following limitations as to the amounts deductible in any year: (1) Pension Trusts. - In the taxable year when paid, if the contributions are paid into a pension trust, and if such taxable year ends within or with a taxable year of the trust for which the trust is exempt under section 501(a), * * * (2) Employees' Annuities. - In the taxable year when paid, in an amount determined in accordance with paragraph (1), if the contributions are paid toward the purchase of retirement annuities * * * (3) Stock Bonus and Profit-Sharing Trusts. - (A) Limits on Deductible Contributions. - In the taxable year when paid, if the contributions are paid into a stock bonus or profit-sharing trust, and if such taxable year ends within or with a taxable year of the trust with respect to which the trust is exempt under section 501(a). * * *
(4) Trusts Created or Organized Outside the United States. * * * (5) Other Plans. - In the taxable year when paid, if the plan is not one included in paragraph (1), (2), or (3), if the employees' rights to or derived from such employer's contribution or such compensation are nonforfeitable at the time the contribution or compensation is paid.↩