Weyenberg Shoe Manufacturing Company v. Commissioner.
Weyenberg Shoe Mfg. Co. v. Commissioner
Docket No. 3348-62.
United States Tax Court
T.C. Memo 1964-322; 1964 Tax Ct. Memo LEXIS 13; 23 T.C.M. (CCH) 1997; T.C.M. (RIA) 64322; December 17, 1964
Dale L. Sorden, 411 E. Mason St., Milwaukee, Wis., for the petitioner. Ralph A. Anderskow, for the *14 respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: The Commissioner determined a deficiency in petitioner's income tax for the taxable year 1959 in the amount of $15,008.76. The only issue for decision is whether the petitioner may deduct as an ordinary and necessary expense of doing business the sum of $28,863.01 paid during the year 1959 to the widow of one of its deceased officers who was also a member of the board of directors. Findings of Fact Some of the facts have been stipulated, and the stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. Petitioner is a corporation organized and existing under the laws of the State of Wisconsin, with its principal office at 234 East Reservoir Avenue, Milwaukee, Wisconsin. Petitioner filed its Federal income tax return for the taxable year 1959 on an accrual basis with the district director of internal revenue at Milwaukee, Wisconsin. Petitioner was incorporated under the laws of the State of Wisconsin in 1906 and has conducted operations in Wisconsin since that time. Its main office and warehouse and two of its plants are located in Milwaukee, *15 Wisconsin. Three additional plants are located in Beaver Dam, Wisconsin, and Portage, Wisconsin. A branch sales office and warehouse are maintained in Portland, Oregon. Petitioner produces and sells to retailers between 9,000 and 10,000 pairs of shoes daily, of which about 95 percent represents a broad line of high fashion quality men's dress shoes and the balance represents a selective line of high-grade men's work shoes and boots. Sales distribution is handled principally by 56 employee sales representatives selling to over 5,000 retail dealers, of whom one generally accounts for less than 4 percent of gross sales and no other accounts for more than 1 percent of gross sales. Based on gross sales volume, petitioner is one of the largest shoe manufacturers in the United States. During at least the last 20 years petitioner has had approximately 1,500 employees, of whom approximately 1,300 are production workers, 50 office workers, 50 sales representatives, and 100 managers, supervisors, and officers. Frank L. Weyenberg (hereinafter referred to as Weyenberg), now age 82, born on March 26, 1882, has been associated with petitioner since its inception in 1906. He was petitioner's president *16 from 1906 until 1963, and he has also been a member of petitioner's board of directors since 1906, as well as chairman of that board since 1963. To the date of this proceeding, he pursued full-time business activities on the part of petitioner. For any year pertinent hereto, he has dominated and controlled the affairs of petitioner in all matters. During 1959 petitioner had outstanding approximately 234,000 shares of its single class of stock which has been listed on the American Stock Exchange since 1937. So far as is known and for any year material hereto, no person owned either beneficially or of record more than 10 percent of the outstanding shares of common stock except Weyenberg, president of petitioner in 1959 and presently chairman of the board of directors of petitioner. He owned beneficially and of record approximately 26 percent, plus of record but not beneficially approximately 7 percent. Theodore R. Simons (hereinafter sometimes referred to as Simons) died suddenly in Milwaukee, Wisconsin, on March 5, 1959, at the age of 65 years. He had been an employee of petitioner since May 1910, starting as an office boy and progressing through a variety of clerical, production, *17 and managerial positions. He was elected a director of petitioner on June 26, 1925, and served as such until his death. He was elected vice-president of petitioner on April 1, 1930, and was elected first vice-president on June 16, 1933, and continuously occupied the latter position until his death. Since 1949 he received the following annual compensation as an employee of petitioner, the amount designated as bonus in each case being paid for services in the previous year: Year
Basic Annual
Received
Salary
Bonus
1949
$35,000.00
$10,000.00
1950
35,000.00
10,000.00
1951
35,000.00
10,000.00
1952
35,000.00
10,000.00
1953
35,000.00
10,000.00
1954
35,000.00
10,000.00
1955
35,000.00
10,000.00
1956
35,000.00
10,000.00
1957
35,000.00
10,000.00
1958
35,000.00
10,000.00
1/1/59 thru 3/5/59
6,136.99 [1]
10,000.00
Federal income taxes were withheld on the above-scheduled amount of $16,136.99 in 1959, and a withholding tax statement, Form W-2, showing total wages paid to Simons or his estate in 1959 in the amount of $16,136.99 was prepared and submitted to his widow, Lucille A. Simons (hereinafter *18 sometimes referred to as Lucille). At the time of Simons' death he and Lucille respectively owned 5,263 and 1,500 shares of petitioner's stock, representing about 2.25 percent and 0.64 percent of the total number of shares outstanding. Simons was not related by blood or by marriage to Weyenberg, the president of petitioner, or to any other officer of petitioner. Simons had also been an active employee of Simplex Shoe Manufacturing Co. (hereinafter sometimes referred to as Simplex) continuously since July 1, 1949, holding the following positions and offices: Positions and
Period
Offices
July 1, 1949, to September 10,
1952
General Manager
January 16, 1951, to date of
his death
Director
September 10, 1952, to date of
his death
Vice-president Since 1949 he received the following annual compensation as a Simplex employee: Year
Annual Basic
Received
Salary
Bonus
1949
None
None
1950
None
None
1951
None
$12,000.00
1952
None
15,000.00
1953
$13,000.00
12,000.00 for 1952
1954
12,000.00
8,500.00 for 1953
1955
12,000.00
8,500.00 for 1954
1956
12,000.00
10,000.00 for 1955
1957
12,000.00
10,000.00 for 1956
1958
12,000.00
10,000.00 for 1957
1/1/59 thru 4/30/59
4,000.00 [1]
10,000.00 for 1958
*19 The above amounts reflect all payments made by Simplex regarding Simons. Payments for March and April 1959 were made directly to Lucille in four equal semi-monthly installments of $400 after withholding Federal income taxes of $100 from regular gross semi-monthly salary of $500. Federal income taxes withheld on the above-scheduled amount of $14,000 in 1959 and a withholding tax statement, Form W-2, showing total wages paid in 1959 in the amount of $14,000 was prepared and submitted to Lucille. Neither Simons nor Lucille had ever owned any capital stock in Simplex. Simplex, a shoe manufacturer and seller of its product to shoe distributors and retailers, has never been related to the petitioner except through the capital stock ownership of Weyenberg. The latter has owned beneficially and of record about 5 percent of the outstanding capital stock of Simplex plus of record but not beneficially about 65 percent of the outstanding capital stock of Simplex. Since its inception in 1920, Simplex has been principally "family owned" by the Weyenberg family. Weyenberg has been president of Simplex since 1920, a member of its board of directors *20 since 1920, and chairman of that board of directors since 1920. For any year material hereto, Weyenberg has controlled and dominated the affairs of Simplex in all matters. Late in 1962, the shoe operations of Simplex, and its name, were sold to third parties. Simplex concurrently changed its name to Weyco, Inc., and has since continued in existence primarily as a holding company. At the time of his death Simons left surviving Lucille and an adult daughter and son. Simons' estate was inventoried for probate purposes at $470,512.78, consisting of shares of stock in petitioner, life insurance, an interest in a pension trust, and jointly-held property. All of Simons' estate was left to Lucille except $7,800 of insurance proceeds left to his daughter. His estate was subject to a Federal estate tax of $31,648.98. On March 11, 1959, a few days after the death of Simons, petitioner held a special meeting of its board of directors. At that time the board of directors consisted of Weyenberg, Robert J. Dempsey, [1] and Galen P. Kirscher, all of whom, together with W. D. Knickel, petitioner's secretary, were present at the meeting. At that board of directors' meeting, petitioner's directors *21 adopted a resolution regarding the payment of $28,863.01 to Lucille. The material portion of the minutes of said meeting is as follows: Because of the untimely death of our Vice President, Theodore R. Simons, which occurred March 5, 1959, and upon the recommendation of the President, the following resolution was adopted by the Board of Directors and ordered placed on the record: WHEREAS, in the death of Theodore R. Simons on March 5, 1959, Vice President and member of the Board of Directors of Weyenberg Shoe Mfg. Co., there has been lost to the Company and to his many associates a man of great ability, integrity, and constructive force for the shoe industry, NOW, THEREFORE, BE IT RESOLVED, That the Board of Directors of Weyenberg Shoe Mfg. Co. does note in its records its tribute to the life and worth of Theodore R. Simons, and its appreciation during almost fifty years of successful association, shared effort, and friendship; and be it further RESOLVED, That a copy of this resolution be tendered to his bereaved family; and be it further RESOLVED, That in memory of and gratitude for the *22 many years of loyal service to the company by Theodore Simons, whose untimely death occurred March 5, 1959, the officers of the Company are hereby authorized to give to his widow the balance of her deceased husband's salary for the year 1959 as an expression of sympathy for her. The resolution was drafted by Knickel, secretary of petitioner, during the special meeting of the board of directors. In arriving at the decision to make a payment to Lucille, the board of directors took into consideration the length of service of and the important position held by Simons. At least one member of the board of directors was of the opinion that the payment to Lucille was to compensate the deceased for the work that he did during his long association with petitioner, especially during the depression years. The directors were also motivated by their desire to maintain the goodwill of their company and to continue their practice of making payments to the widows of deceased key employees, to which reference is hereinafter made. There was no discussion at the meeting regarding the tax consequences of the payment either to the petitioner or to Lucille. Weyenberg was aware of the sizable estate left *23 by Simons. Since November 1944, petitioner has had a qualified section 401(a) [2] pension trust plan commonly known as the Massachusetts Mutual Life Insurance plan providing for retirement or death benefits for certain of its employees, including Simons. In addition, petitioner has had another qualified section 401(a) plan commonly known as the annuity plan providing for retirement or death benefits for certain salaried employees, including Simons. The contributions to the two plans are paid in full by petitioner and are deducted by petitioner for Federal income tax purposes. The employees make no contributions to the plans. Because the plans are accepted by the United States Government as qualified, none of petitioner's contributions when made are treated at that time as taxable income to the participants. Upon Simons' death in 1959, Lucille became vested with a total amount of $81,600 from the pension trust Massachusetts Mutual Life Insurance plan with respect to Simons. Prior to his death, Simons had a nonforfeitable vested interest in this formal funded pension trust. After *24 his death, instead of taking the amount of $81,600 in a lump sum, Lucille elected to receive a monthly annuity for a guaranteed period of twenty years certain or her lifetime, whichever is longer. The amount of the monthly annuity is approximately $475. Under the petitioner's salaried employees' annuity plan, Lucille is entitled to receive an annual amount of $1,965 for the rest of her life. Prior to his death, Simons had a nonforfeitable vested interest in this formal annuity plan. Petitioner also provided group term life insurance for certain of its employees, including policies on the life of Simons in the total face amount of $28,000, the beneficiary of these policies being Lucille. The premium payments for these insurance policies on the life of Simons were paid by petitioner. Simons was covered under petitioner's group accident, health, and hospitalization insurance plan paid by petitioner. In addition to the above-stated plans, petitioner also made it a practice to make payments to the widows of deceased key employees. A key employee was considered to be a foreman, manager, superintendent, officer, or salesman. These employees did not have employment contracts and were not *25 members of a union like the production workers were. The amount of the payment was based upon the length of service of the deceased employee, as well as the size of his family. The ultimate decision of whether a payment would be made and the amount thereof rested with Weyenberg or Dempsey, vice-president of petitioner. There was no established formula utilized by petitioner in arriving at the amount of the payment. The practice of making these payments was known to the key employees of petitioner, and to some extent, the employees expected similar payments to be made to their widows. The widow of every key employee who has died while in the employ of petitioner, from at least 1944 to the present, has received a payment from the petitioner. Following is a list of all the key employees who have died while employed by petitioner, together with certain pertinent information: Annual Com-
pensation in
Position at
year prior
Name of Em-
Employed
Date of
to year of
ployee
Since
Died
Death
death [1]
J. Kelly
1919
1944
Ship. Supt.
$ 4,220
O. F. Leitzke
1907
1950
Prod. Mgr.
8,206
W. F. Rudolph
1915
1951
Purch. Agt.
6,492
H. Verle
1924
1954
Time Study
6,025
J. V. Kramer
1927
1954
Div. Sales Mgr.
10,931
J. W. Banbury
1941
1955
Quality Mgr.
7,455
F. Collette
1926
1956
Quality Mgr.
7,613
A. R. Glamn
1930
1957
Adjustments
5,280
F. R. Cichy
1937
1958
Sole Lea. Supt.
8,629
T. R. Simons
1910
1959
Vice-President
45,000
I. L. McCabe
1920
1959
Branch Mgr.
12,000
H. J. Russell
1930
1961
Salesman
16,616
B. J. Rosman
1928
1962
Salesman
17,282
P. Mehan
1925
1963
Salesman
14,059
*26 Benefits Paid Widow
Period
Amount
over
of Each
Total
which
Name of Em-
Pay-
Pay-
Paid
ployee
ment
ments
(Mos.)
J. Kelly
$ 50.00
$ 300.00
6
O. F. Leitzke
625.00
1,250.00
2
W. F. Rudolph
240.00
960.00
2
H. Verle
250.00
750.00
1 1/2
J. V. Kramer
412.50
412.50
1
J. W. Banbury
282.50
575.00
1
F. Collette
292.50
1,170.00
2
A. R. Glamn
220.00 [2]
440.00 [2]
1
F. R. Cichy
375.00
750.00
1
T. R. Simons
2,916.66
28,863.01 [3]
10
I. L. McCabe
1,000.00
1,000.00
1
H. J. Russell
200.00
6,600.00
33
B. J. Rosman
200.00
4,800.00
24
P. Mehan
150.00
1,800.00
12
To date, the only officer of petitioner who has died in office is Simons. In no case, except that of Simons, was the payment approved by a formal resolution of petitioner's board of directors. Petitioner had no contractual obligation to Simons or other agreement with him to make the payments in question. There was no discussion by Simons with petitioner regarding the payments in question or payments similar thereto for his widow upon his death. Immediately *27 prior to Simons' death, petitioner was not contractually obligated to Lucille to make the payments totaling $28,863.01 to her as the surviving widow. Lucille at no time rendered any services to petitioner. Petitioner paid directly to Lucille in 1959 the amount of $28,863.01 in full by checks made payable to the order of Lucille A. Simons. No Federal income tax, FICA, or any other payroll deductions were withheld or directed to be made from the foregoing payments. No withholding tax statement, Form W-2, was prepared and submitted to Lucille to report the foregoing payments. The aforementioned payments were incurred and paid by petitioner during the taxable calendar year 1959 to Lucille. The amounts so paid were charged to petitioner's bookkeeping account entitled "Pensions Account" and deducted in computing petitioner's income for bookkeeping, financial statements, and tax return purposes, being included on the tax return for 1959 in the amount deducted as "Salaries and Wages." The payments in question were not paid under a stock bonus, pension, profit-sharing, or annuity plan as included within the meaning of the provisions of paragraphs (1), (2), or (3) of section 404(a). *28 Both petitioner's compensation to Simons during his life and the payments here in question to Lucille were paid by checks drawn on petitioner's executive payroll account. All checks drawn on this account are prepared and signed without voucher by petitioner's secretary, W. D. Knickel, the only written record thereof, other than the checks themselves, being the "Employee's Payroll Record Card" maintained for each executive by Knickel. Knickel, at the board of directors' meeting on March 11, 1959, became a director of petitioner. On January 22, 1960, without any request on the part of Lucille, Knickel wrote the following letter to her: January 22, 1960 Mrs. Lucille A. Simons, 3033 N. Lake Drive, Milwaukee 11, Wis.
Dear Mrs. Simons: Enclosed you will find Form W-2 for 1959 showing the taxable compensation to be reported in your joint tax return for the year 1959. The payments which were made to you direct subsequent to Ted's death we consider as gifts from the corporation to you as the widow of an employee, and we are taking the position that these payments are not taxable because they are gifts. With kindest regards, /s/ Bill W. D. Knickel, Secy. Lucille has treated *29 the payments in question as not taxable income in filing Federal income tax returns for herself and her deceased husband. Neither did Lucille report these payments as gifts under the Wisconsin Gift Tax Law. By notice dated January 29, 1963, the Wisconsin Department of Taxation proposed an assessment of gift taxes and interest thereon against her in the amount of $4,247.99 on account of these payments, which she paid. The respondent has included the payments in question in Lucille's income, thereby assessing against her additional income taxes of about $14,000 for which a notice and demand for payment has been made. As of the date of trial, Lucille had not yet paid the additional taxes but intends to do so and then to sue for refund thereof. Ultimate Fact The payment of $28,863.01 by petitioner to the widow of its deceased vice-president was an ordinary and necessary business expense fully deductible by the corporation. Opinion Petitioner argues that the purpose of the payment was partly to compensate Simons for his prior services, partly to show its gratitude for those services, and partly to continue the custom it had of making this kind of payment in order to maintain the *30 morale of its key employees. Petitioner maintains that all of the aforementioned motives arise out of a business relationship and, accordingly, the payment in question is deductible by it as an ordinary and necessary business expense. Respondent, on the other hand, contends that the payment was not compensatory in nature but was a "gift" to the widow of Simons. Furthermore, respondent maintains that the payment was not an "ordinary" or "necessary" business expense of petitioner. Respondent argues (1) that the payment was not "ordinary" because the petitioner did not have a practice or plan of making such payments and (2) that the payment was not "necessary" because the petitioner did not derive any benefit from the payment. [3] We agree with petitioner. The sole question we have before us is the deductibility by the petitioner of $28,863.01 paid to the widow of its deceased vice-president during the year 1959. The answer to this question depends upon whether the payment in question constitutes an ordinary and necessary *31 business expense within the meaning of section 162. [4] If the payments are ordinary and necessary business expenses, they would be deductible under section 404(a)(5) [5] in 1959, the year paid. [6] We feel this question must be answered in the affirmative. *32 The issue here presented is, in our opinion, controlled by our decision in Fifth Avenue Coach Lines, Inc., 31 T.C. 1080 (1959), affd. in part and reversed in part on other issues 281 F. 2d 556 (C.A. 2, 1960), certiorari denied 366 U.S. 964 (1961). In that case we said, at 1094: The motives for making the payments here involved are ambiguous and multiple; such is often the case. In Peters v. Smith, 221 F. 2d 721, 725 (C.A. 3, 1955), it was noted that "the employer in providing the questioned payments did not indicate unequivocally whether such action was intended as additional compensation for past services, or merely as an expression of a philanthropic attitude, or as a bid for employee good will, or as some combination of these." In the instant case, we find that the payments to Sheeran's widow were intended in part as additional compensation for past services rendered by Sheeran, in part to show gratitude for such past services, and in part to aid in the support of Sheeran's widow. We feel the facts in this case are even stronger in favor of the petitioner. The directors, in the instant case, were not motivated by the desire *33 to provide financial aid for the widow of its deceased officer. The widow was left a sizeable estate and was perfectly capable of providing for her own financial needs. The directors were aware of the sizeable estate left by Simons. We feel the directors were motivated by a strong desire to provide additional compensation for a man who had devoted 49 years to the service of petitioner. Petitioner's directors were also motivated by a desire to show their gratitude to a man who had dedicated almost a half century to the service of petitioner. But even more important, we feel the directors were motivated by their desire to continue the custom and practice of making similar payments to the widows of all deceased officers, managers, superintendents, and salesmen. Every "key employee" who has died while within the employ of petitioner at least since 1944, has had a similar payment made to his widow. There is no doubt in our minds that the directors were aware of the effect such payments had on the morale of its officers and other key employees. For this reason alone the deduction could be allowed. Champion Spark Plug Co., 30 T.C. 295, 298 (1958), affd. 266 F. 2d 347 *34 (C.A. 6, 1959); Simpson v. United States, 261 F. 2d 497, 500 (C.A. 7, 1958). We feel that under these circumstances the payments were both "ordinary" in that the petitioner had established a practice of making payment to the widows of all of its deceased key employees [7] and that the payments were "necessary" in that they served a business purpose in maintaining the morale and incentive of its executives and managerial staff. It must be remembered that we are not dealing here with a closely-held corporation wherein the deceased employee was a major or controlling stockholder. In cases of that nature, close scrutiny of the transaction is warranted. However, here we are hesitant to substitute our judgment for that of the board of directors. Welch v. Helvering, 290 U.S. 111 (1933). Furthermore, we have previously held that where payments of this nature are made for a limited or over a reasonable period of time they are deductible business expenses. I. Putnam, Inc., 15 T.C. 86 (1950). This is entirely consistent with respondent's stated position. (A)-12 (A)-12 Section 1.404 (a)-12, Income Tax Regs.; I.T. 3329, 1939-2 C.B. 153; *35 cf. McLaughlin Gormley King Co., 11 T.C. 569 (1948). We do not agree with respondent when he states that this case should be controlled by Interstate Drop Forge Co. v. Commissioner, 326 F. 2d 743 (C.A. 7, 1964), affirming a Memorandum Opinion of this Court, wherein this Court disallowed a deduction to the taxpayer-corporation for a payment made to the widow of one of its deceased executives. The following facts present in Interstate Drop Forge Co. distinguish that case from the instant one: (1) No element of compensation was included in the payment to the widow; (2) the resolution of the board of directors was prompted solely out of gratitude for the services performed by the deceased; and (3) no plan or policy was in existence whereby the corporation had made similar payments to the widows of other employees or deceased executives. Further and of prime importance was the finding that the directors were not in the least motivated by any concern for the morale and incentive of its staff. *36 Nor do we feel that the letter written by the secretary of petitioner to Simons' widow [the entire letter is set forth in our Findings of Fact] wherein it is stated that the payments are considered gifts from the corporation and are not taxable requires a contrary result. As stated previously, we have only one issue before us and that is the deductibility of the payment by the petitioner. We are not concerned with the tax consequences to the recipient of the payment. Moreover, a determination of the latter question would in no event be determinative of the issue before us. Fifth Avenue Coach Lines, Inc., supra.Cf. Commissioner v. Duberstein, 363 U.S. 278, 287 (1960). Furthermore, a finding that the payment constituted a gift would still not prohibit a deduction by petitioner. Fifth Avenue Coach Lines, Inc., supra. Accordingly, we hold that the payments in issue totaling $28,863.01 are fully deductible by the petitioner as ordinary and necessary business expenses. Fifth Avenue Coach Lines; Inc., supra. Decision will be entered for the petitioner. Footnotes
1. Portion of annual amount of $35,000.00.↩
1. Portion of annual amount of $12,000.00.↩
1. Robert J. Dempsey, now age 80 and seriously ill, is at present in a hospital.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954.↩
1. Amount to nearest dollar. ↩
2. Plus fraction. ↩
3. Payment in question.↩
3. Respondent makes no argument that the payment of $28,863.01 constitutes a nondeductible dividend. Cf. Barbourville Brick Co., 37 T.C. 7↩ (1961).
4. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - (1) a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *↩
5. SEC. 404. DEDUCTION FOR CONTRIBUTIONS OF AN EMPLOYER TO AN EMPLOYEES' TRUST OR ANNUITY PLAN AND COMPENSATION UNDER A DEFERRED-PAYMENT PLAN. (a) General Rule. - If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under section 162 (relating to trade or business expenses) or section 212 (relating to expenses for the production of income); but, if they satisfy the conditions of either of such sections, they shall be deductible under this section, subject, however, to the following limitations as to the amounts deductible in any year: * * *
(5) Other Plans. - In the taxable year when paid, if the plan is not one included in paragraph (1), (2), or (3), if the employees' rights to or derived from such employer's contributions or such compensation are nonforfeitable at the time the contribution or compensation is paid. * * *↩
6. Similarly, if amounts are paid as a death benefit to the beneficiaries of an employee (for example, by continuing his salary for a reasonable period), and if such amounts meet the requirements of section 162 or 212, such amounts are deductible under section 404(a)(5) in any case when they are not deductible under the other paragraphs of section 404(a). * * * [Sec. 1.404(a)-12, Income Tax Regs.↩]
7. One need only look at the many Tax Court as well as District Court cases involving this issue to conclude that a payment of this nature is an "ordinary" expense of doing business. Cf. Deputy v. DuPont, 308 U.S. 488↩ (1940).